René Lastreto II, #100993
rl2@lrplaw.net
Michael J. Gomez, #251571
mjg@lrplaw.net
Lang, Richert & Patch
Post Office Box 40012
Fresno, California 93755-0012
(559) 228-6700 Phone
(559) 228-6727 Fax

M:\35062\Pleadings\East West Bank RFS Mtn\RFS Opp.wpd:dc

Counsel for the Official Committee of
Unsecured Creditors of TWN Investment Group, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **In the Matter of** | Case No. 13-50821 SLJ |
| TWN INVESTMENT GROUP, LLC, | Chapter 11 |
| | Honorable Stephen L. Johnson |
| Debtor. | **OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EAST WEST BANK'S MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(2)** |
| | Date: October 15, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 3099<br>280 South First Street, Third Floor<br>San Jose, CA 95113 |

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATED BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors of TWN Investment Group, LLC (the "Committee"), a party in interest in the case of TWN Investment Group, LLC (the "Debtor"), submits this Opposition to the "*Motion for Relief from Stay under 11 U.S.C. § 362(d)(2)*" [docket no. 116] (the "Motion") filed by East West Bank (the "Bank"). In support of its Opposition, the Committee respectfully represents as follows:

I. **FACTUAL BACKGROUND**

On May 15, 2013, the Court entered an order authorizing an examination of the Bank under Bankruptcy Rule 2004.[1] In response, the Bank produced over ten thousand pages of documents to the Committee. The documents produced detail some of the history of the Debtor's loans with the Bank.

As obliquely referenced by the Bank in the Motion, the Debtor is in the business of developing the real property located at 915 Story Road, San Jose, California (the "Real Property"), primarily to be sold as commercial condominiums. In early 2005, the Debtor acquired the Real Property. The Debtor financed its acquisition of the Real Property, in part, through a secured loan (the "Land Loan") that it obtained from United Commercial Bank ("UCB")–the Bank's predecessor-in-interest. At the time, the Debtor was also taking deposits from potential purchasers of commercial condominiums to be developed at the Real Property though no such condominiums had been built (the "Purchasers"). (*See, e.g.*, Claims Registry, Proof of Claim No. 5, underlying contract dated October 8, 2004.)

The Debtor and UCB agreed to modify the Land Loan on several occasions, ultimately agreeing to increase the principal amount of the Land Loan to $18,860,000 and extend the maturity date to October 5, 2009. Following its acquisition of the Real Property, the Debtor began developing the Real Property and solicited additional financing from UCB. On or about November

---

[1] All code, section, and rule references refer to the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) and the Federal Rules of Bankruptcy Procedure (Rules 1001 - 9037), unless otherwise stated or indicated by the context.

2008, the Debtor obtained a construction loan from UCB in the original principal sum of $31,140,000 (the "Construction Loan") with a maturity date of December 12, 2009. Both loans were secured by separate Deeds of Trust against the Real Property.

The Debtor and UCB negotiated the terms of the Construction Loan over a lengthy period of time. As a condition to extending the Construction Loan, UCB demanded that the Debtor either obtain subordination agreements from the Purchasers or an amendment to their purchase agreements whereby the Purchasers would waive any lien rights they may have and acknowledge the seniority of UCB's liens. Eventually, UCB waived the conditions that the Debtor obtain subordination agreements, satisfied with the Debtor obtaining amendments to the purchase agreements from the Purchasers. (Gomez Decl. ¶¶ 4 - 11, Exhs. 2 - 9; Nguyen Decl. ¶ 5, Exh. 1; Claims Registry, Claim No. 3, subpart 4 (section XI.B.1. of the Construction Loan's Promissory Note).)

The Debtor did not obtain purchase agreement amendments from all the Purchasers. (*See, e.g.*, Claims Registry, Proof of Claim Nos. 5, 7 - 20; Nguyen Decl. ¶ 5; Gomez Decl. ¶¶ 11 - 12, Exhs. 9 - 10.)[2] UCB was clearly concerned that the Debtor's failure to obtain such amendments would cause its first Deed of Trust for the Land Loan to lose priority to the Purchasers. On several occasions, in its own internal memoranda, UCB admitted:

> UCB has now received the executed Second Extension Agreements and Second Amendments to the Purchase and Sale Agreement and Escrow Instructions dated 9/1/07 from the Phase I Buyers, but not from the Phase 2 and 3 Buyers. **Not obtaining Second Extension Agreements and Second Amendments** to the Purchase and Sale Agreement and Escrow Instructions dated 9/1/07 from the Phase 2 and Phase 3 Buyers **may give the Phase 2 and 3 Buyers a priority lien ahead of UCB's First Deed of Trust**.

(Gomez Decl. ¶¶ 11 - 12, Exhs. 8 - 9.) (Emphasis added.)

In addition, to these lien priority issues, the Bank's appraisal estimates the value of the completed units for the Real Property at $16,200,000 on a bulk sale basis. The appraisal assumed there are 59 units comprising 59,957 square feet.[3] (Motion, Exh. 1, internal page 22.) On a per unit

---

[2]There is no indication that the Purchasers' contracts were ever recorded. (*E.g.*, Claims Registry, Proof of Claim No. 4, subparts 14 - 20, Trustee's Sale Guaranty.)

[3]There may be fewer units available now in light of the prior sale motions approved by the Court.

basis, the bulk value is $274,576 per unit, assuming each unit is approximately 1,016 square feet. Multiple creditors in this case are willing to waive their claims and purchase the units based on the Bank's bulk value per unit, indicating that the Bank has undervalued its collateral. (Nguyen Decl. ¶¶ 3 - 4.)

## II. ARGUMENT

### A. SINCE THE PRIORITY OF THE BANK'S LIENS ARE IN BONA FIDE DISPUTE, THE BANK CANNOT PROVE THE ESTATE LACKS EQUITY IN THE PROPERTY

#### 1. Absence of Priority of the Bank's Liens is a Defense to Relief From Stay.

Multiple courts, including the Ninth Circuit Court of Appeals, hold that on a motion for relief from stay, a court should consider affirmative defenses and counterclaims that directly involve the validity of the movant's security interest and/or the debtor's equity in the property. "When a debtor's affirmative defenses and counterclaims [to the creditor's stay relief motion] directly involve the question of the debtor's equity, they should be heard in the stay proceeding." *In re Bialac*, 694 F.2d 625, 627 (9th Cir. 1982); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 327 n. 64 (Bankr. S.D.N.Y. 2001) (same) (cited by the Bank in the Motion); *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 291 (Bankr. S.D.N.Y. 1991).

> In sum, then, when affirmative defenses or counterclaims are asserted and raised which strike at the heart of the amount of the creditor's claim or the validity of his lien, such defenses or counterclaims directly affect the issue of equity and thus the issues of harm and adequate protection, as well as the reasonable probability of any plan of reorganization. When such are asserted or raised, the court should give consideration to them in determining whether or not the stay should remain n effect.

*United Cos. Fin. Corp. v. Brantley*, 6 B.R. 178, 188 (Bankr. N.D. Fla. 1980).

Courts that have confronted the issue have determined that any colorable challenge to the moving party's security interest, whether it be to the extent, validity, or priority of the security interest, uniformly agree that the challenge constitutes a valid defense in a relief from stay proceeding. *See, e.g., In re Hubbel*, 427 B.R. 789, 794-798 (N.D. Cal. 2010) (affirming maintenance of stay to determine TILA issues that might void security interest) (Breyer, J.); *see also In re Franklin Equip. Co.*, 416 B.R. 483, 503-507 (Bankr. E.D. Va. 2009) (synthesizing cases

treating relief from stay as a summary proceeding and distinguishing them from cases where the respondent challenged the validity of the creditor's lien and therefore the equity in the property).

For example, in *Poughkeepsie Hotel*, the court reasoned as follows:

> The rationale for allowing the affirmative defense of equitable subordination to a motion for relief from the automatic stay is easily illustrated. Where a foreclosure action is pending, a debtor may file a bankruptcy petition or its creditors may commence an involuntary petition against the debtor to stay the foreclosure sale. Upon commencement of the bankruptcy case, the debtor and its unsecured creditors have a "variety of protections under the Bankruptcy Code to capture any equity in the property, subject to providing adequate protection to the secured creditor." These protections include [avoidance of post-petition transfers, recovery of preferences, and equitable subordination]. Should, for example, the respondent to a motion for relief from the automatic stay prevail on an equitable subordination defense, the movant would be deprived of secured status, thereby creating equity for the benefit of the estate.

*In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292-293 (Bankr. S.D.N.Y. 1991) (internal citations omitted).

Similarly, in *In re Waste Alternatives, Inc.*, 171 B.R. 147, 148 (Bankr. M.D. Fla. 1994), a secured creditor moved for relief from stay and the committee challenged the validity of the creditor's lien. The court held that while it may not determine the invalidity of the lien in the context of a relief from stay motion, it may consider evidence of the invalidity of the lien "in determining the appropriateness of requiring the parties to litigate the lien's validity at all or the need for adequate protection." *Id.* The court lifted the stay "only to the extent that an action filed in a court of competent jurisdiction to determine the validity and extent of [the creditor's] lien." The court concluded it would not lift the stay to allow foreclosure, nor grant adequate protection, until after the determination of the validity of the creditor's lien. *Id.*

As succinctly summarized by a third court:

> While the terms of 11 U.S.C. Section 362 suggest that the only issues to be litigated are adequate protection, equity, and necessity to an effective reorganization, some proof of the existence and amount of a debt must necessarily be an element of the equity analysis. I seriously question whether this court can make a final determination that the lien or the underlying debt is invalid outside the context of an adversary proceeding (with the procedural due-process built into those proceedings) or without benefit of a final judgment rendered in another forum. Nevertheless, <u>when presented with evidence in defense of a motion for relief that strongly supports an inference that the lien might be held invalid in such a proceeding, this court would be compelled to deny the motion and leave the stay in effect for a sufficient time to allow the debtor to pursue other litigation.</u>

*In re Rice*, 82 B.R. 623, 626 (Bankr. S.D. Ga. 1987) (emphasis added).

The priority of the Bank's liens and the estate's equity in the Real Property are subject to bona fide dispute. The Bank's own internal documents shows that it doubted the very validity of its own liens vis-a-vis the Purchasers. Indeed, the Bank's own reports show that it was concerned that its "[m]ain collateral is secured by a junior lien." At a minimum, the stay should be kept in place to allow the Debtor to investigate these issues and bring an action to determine the priority of the Bank's liens under Bankruptcy Rule 7001(2) so that the equity in the Real Property may be preserved for the benefit of unsecured creditors.

**2. California Law Grants the Purchasers Lien Rights Which May Be Preserved For the Estate.**

Under California law, the purchaser or vendee under an installment sales contract obtains an "equity ownership" in the real property though they do not hold legal title or have possession. *Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal.3d 629, 637-38 (Cal. Ct. App. 1974); *Marks v. Bunker,* 165 Cal.App.2d 695, 700 (1958). The purchaser's equity interest functions like a security interest, guaranteeing the performance of the seller. *Taggart v. Cal-Linda Packaging Co.,* 146 Cal.App.2d 545, 548 (Cal. Ct. App. 1956); *Retsloff v. Smith,* 79 Cal.App.443, 448 (Cal. Ct. App. 1926); *Elliott v. McCombs,* 17 Cal.2d 23, 31 (Cal. 1941); *Los Angeles County v. Butcher,* 155 Cal.App.2d 744, 747 Cal. Ct. App. (1957).

Recording the installment sale contract imparts constructive notice of the purchaser's equitable estate to subsequent purchasers or lienors. *Minaker v. Sunset Bldg & Real Estate Co.,* 25 Cal.App. 771, 774-75 (Cal. Ct. App. 1914); *Alhambra Redevelopment Agency v. Transamerica Fin. Servs.,* 212 Cal.App.3d 1370, 1376 (Cal. Ct. App. 1989). A purchaser cannot enforce the equitable estate against a subsequent purchaser or lienor without actual or inquiry notice of the installment sale contract. *Beach v. Faust,* 2 Cal.2d 290, 293 (Cal. 1935); *Bernhard v. Wall,* 184 Cal. 612, 625, 630-31 (Cal. 1921).

The purchaser's equitable rights trump the lien of a subsequent lienor with notice or who is otherwise not a bona fide encumbrancer. A lienor has actual knowledge when that person "actually knows or could discover by making a reasonable investigation." *Perry v. O'Donnell,* 749 F.2d 1346, 1349-1351 (9th Cir. 1984). A person may have actual knowledge when someone tells

them of the prior interest (*Laughton v. McDonald*, 61 Cal.App. 678, 683 (Cal. Ct. App. 1923) (vendee told a subsequent purchaser); *Lawton v. Gordon*, 37 Cal. 202, 205-06 (Cal. 1869) (recorder told purchasers of prior deed)); the person overhears of the prior interest in a conversation (*Hart v. Erickson*, 63 Cal.App.2d 719, 722 (Cal. Ct. App. 1944)); or where the person learns of the interest from a document (*Beverly Hills Nat'l Bank & Trust Co. v. Seres*, 76 Cal.App.2d 255, 261-64 (Cal. Ct. App. 1946)).

The purchaser's equitable rights manifest themselves in an equitable lien that has been recognized by California's Legislature. *See* Civil Code §§ 3047-3050; *Montgomery v. Meyerstein*, 186 Cal. 459, 464-65 (Cal. 1921). In particular, section 3050 provides that "[o]ne who pays the owner of any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration." A subsequent lienor who has knowledge of the installment sale contract is subject to the vendee's lien though there is no reference to the contract in the public records. *Lockie v. Co-operative Land Co.*, 207 Cal. 624, 628-29 (Cal. 1929); *Keese v. Beardsley*, 190 Cal. 465, 470-71 (Cal. 1923) (vendee lien senior to optional advance under deed of trust); *Garcia v. Atmajian*, 113 Cal.App.3d 516, 520-21 (Cal. Ct. App. 1980); *Bartley v. Karas*, 150 Cal.App.3d 336, 340-41 (Cal. Ct. App. 1983), *disapproved on other grounds by Petersen v. Hartell*, 40 Cal.3d 102 (Cal. 1985). For example, in *Bartley v. Karas*, the court determined that the purchaser's lien was senior to the recorded deed of trust because the beneficiary of the deed of trust was the broker that facilitated the sale to the purchaser.

In this instance, there is no evidence that the Purchasers recorded their purchase agreements with the County Recorder. That does not end the Court's inquiry. The evidence is the Bank was aware of the purchase agreements before providing its financing. The Bank not only knew of the equitable lien claim but recognized its significance in internal memoranda. While unperfected against third parties, any equitable lien rights of the Purchasers under section 3050 of the California Civil Code would therefore be valid, enforceable, and senior to any interests of the Debtor and the Bank. These senior, unperfected liens may be avoided and preserved for the benefit of all creditors. *See* 11 U.S.C. §§ 544(a)(3), 551; *see, e.g., In re Kaltenheuser*, 474 B.R. 305 (Bankr. D.D.C. 2012)

(stay relief denied because debtor held colorable claim under section 544(a)(3)). If the Bank is granted relief from the automatic stay, the estate will be deprived of a significant right to preserve equity in the Real Property for unsecured creditors.

**B.    THE REAL PROPERTY IS NECESSARY FOR AN EFFECTIVE REORGANIZATION**

The Real Property is unquestionably necessary for an effective reorganization. According to the Debtor's Schedules, the Real Property is the estate's only asset. Should the Debtor succeed in contesting the priority of the Bank's liens, the Debtor will be able to sell the Real Property to provide a significant distribution to unsecured creditors.

**III.   CONCLUSION**

Based on the arguments and authorities set forth above, the Committee respectfully requests that this Court enter an Order:

1. Denying relief from the automatic stay; or, alternatively,
2. Conditioning the automatic stay subject to the Debtor prosecuting an action against the Bank pursuant to 11 U.S.C. §§ 544(a)(3), 551, and Bankruptcy Rule 7001(2) to determine the priority of any equitable liens held by the Purchasers, avoid those liens, and preserve them for the benefit of the estate; and
3. For such other and further relief as the Court deems just and proper.

Dated: October ___, 2013

LANG, RICHERT & PATCH, P.C.

By _____
Michael J. Gomez
Bankruptcy Counsel to the
Official Unsecured Creditors
Committee of TWN Investment
Group, LLC